IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN K., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:20-cv-01655-G-BT |
| | § | |
| KILOLO KIJAKAZI, | § | |
| ACTING COMMISSIONER OF | § | |
| SOCIAL SECURITY,[1] | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Steven K.'s[2] civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. (ECF No. 1). The District Court referred the case to the United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. (ECF No. 3). For the reasons explained below, the District Court should AFFIRM the Commissioner's decision.

---

[1] Ms. Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and she is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## Background

Plaintiff alleges he is disabled due to a variety of impairments, including idiopathic neuropathy, chronic pain, and arthritis. Admin. R. (A.R.) 27, 49 (ECF No. 12-1). He was born in 1972 and was 44 years old on his alleged disability onset. *Id.* at 30. Plaintiff has some post-high school education and can communicate in English. *Id.* at 27, 30. He has past work experience as an assistant and district manager in retail stores and in customer service. *Id.* at 27.

On October 5, 2017, Plaintiff applied to Social Security for disability benefits and supplemental security income (collectively, "disability benefits"). A.R. 21. After his application for disability benefits was denied initially and upon reconsideration by the Commissioner, Plaintiff requested a hearing before an administrative law judge (ALJ) to determine whether he is disabled. *Id.* The hearing took place in Dallas, Texas, on March 12, 2019. *Id.*

The ALJ determined that Plaintiff was not disabled and therefore not entitled to disability benefits. *Id.* At step one of the five-step sequential evaluation,[3]

---

[3] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue,* 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff can perform. *Id.* at 448; *Copeland v. Colvin,* 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted).

the ALJ found Plaintiff had not engaged in substantial gainful activity since January 4, 2017. *Id.* at 24. At steps two and three, the ALJ found that Plaintiff had severe impairments of substance abuse and morbid obesity, but Plaintiff's impairments, or combination of impairments, did not meet or equal the severity of any listed impairment in the social security regulations. *Id.* at 24-26. At step four, the ALJ found Plaintiff had the residual functional capacity (RFC) to perform sedentary work with some physical limitations and excessive absences from work during periods of active substance abuse. *Id.* at 27. Plaintiff could not perform his past work due to his drug addiction or alcoholism (DAA). *Id.* at 30. At step five, relying on the testimony of a vocational expert (VE), the ALJ found that Plaintiff cannot perform any job that exists in significant numbers in the national economy due to Plaintiff's DAA. *Id.* at 30-31. However, if Plaintiff stopped his DAA, the ALJ found that Plaintiff could perform two sedentary positions of Plaintiff's past relevant work—district manager and customer service representative—because Plaintiff would no longer be absent from work. *Id.* at 31-36. According to the ALJ, Plaintiff's DAA is a contributing material factor to the determination of disability because Plaintiff would not be disabled if he stopped using drugs or alcohol. *Id.* at 36. Therefore, the ALJ determined Plaintiff was not disabled. *Id.*

---

A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland,* 771 F.3d at 923 (citing *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen,* 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler,* 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

Plaintiff appealed the ALJ's decision to the Appeals Council. *See id.* at 9, 15. The Council denied review. *Id.* at 5, 12. Plaintiff then filed this action in federal district court, in which he contends the ALJ erred in finding him not disabled. Specifically, Plaintiff argues that the ALJ's disability determination and denial of benefits is not supported by substantial evidence. Pl.'s Br. 1-2 (ECF No. 15).

## Legal Standards

The Court's "review of Social Security disability cases is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard." *Copeland v. Colvin,* 771 F.3d 920, 923 (5th Cir. 2014) (citation and internal quotations omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citation omitted); *see Copeland,* 771 F.3d at 923 ("Substantial evidence is more than a mere scintilla and less than a preponderance." (citing *Perez v. Barnhart,* 415 F.3d 457, 461 (5th Cir. 2005)) (citation and internal quotation marks omitted)).

The ALJ, and not the courts, resolves conflicts in the evidence; thereafter, the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater,* 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citation omitted). Hence, the Court may not substitute its own judgment for the ALJ's, and it may affirm only on the grounds that the ALJ stated to support the administrative decision. *Copeland,* 771 F.3d at 923 (citation omitted).

## Analysis

Plaintiff argues substantial evidence does not support the ALJ's determination of disability and denial of benefits because (1) the ALJ's DAA determination is not supported by medical evidence from an acceptable medical source, (2) the ALJ failed to account for all Plaintiff's severe impairments, and (3) substantial evidence does not support the ALJ's RFC assessment. Pl.'s Br. 1-2.

The ALJ bears the "sole responsibility for determining the [plaintiff's] disability status." *Thibodeaux v. Astrue*, 324 F. App'x 440, 443 (5th Cir. 2009) (citing *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)). "Determining a [plaintiff's] residual functioning capacity is the ALJ's responsibility, and [the ALJ] has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam). After reviewing the hearing decision and the administrative record, the Court finds the ALJ's decision is supported by substantial evidence.

1. Medical evidence from an acceptable medical source supports the ALJ's DAA determination.

Plaintiff first argues that the ALJ's DAA finding is not supported by medical evidence from an acceptable medical source and, even if there was such support in the administrative record, the ALJ did not cite it, which is a legal error that requires remand. Pl.'s Br. 14-17. The Commissioner responds that an acceptable medical

source provided a DAA diagnosis and the ALJ relied on it when making her finding. The Court agrees.

If a plaintiff is found disabled and there is medical evidence of DAA, the ALJ "must determine whether [the DAA] is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535, 416.935. To make this determination, the ALJ considers the extent to which Plaintiff's mental and physical limitations would remain if Plaintiff stopped using drugs and alcohol. *Id.* If the remaining limitations would not be disabling, the DAA is a contributing factor material to the determination of disability and Plaintiff is not disabled. *Id.*; *see* Social Security Ruling (SSR) 13-2p, 2013 WL 603764, at *11941.

A DAA materiality determination is made only when there is "medical evidence from an acceptable medical source establishing that a [plaintiff] has a Substance[-]Abuse Disorder." SSR 13-2p, 2013 WL 603764, at *11941. A licensed physician, psychologist, or physician assistant are some "acceptable medical sources." 20 C.F.R. §§ 404.1502, 416.903. They provide medical evidence that are "signs, laboratory findings, or both." *Id.* Signs are "one or more anatomical, physiological, or psychological abnormalities that can be observed," apart from Plaintiff's statements or symptoms alleged. *Id.* Psychiatric signs are "medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.*

Here, there is medical evidence from an acceptable medical source establishing that Plaintiff suffers from DAA. The ALJ cites generally Exhibit 9F of the administrative record when discussing Plaintiff's DAA. *See* A.R. 25, 29. Exhibit 9F includes Plaintiff's patient records from Clear Spring Healthcare (known as "Clear Springs Ranch"), a substance-abuse-rehabilitation facility. *See* A.R. 55-56; *see generally id.* at 653-1081.

Within these patient records, Dr. Josh Warren, M.D., a physician licensed to practice medicine in the State of Texas, certified that treatment at Clear Springs Ranch is medically necessary and could not be effectively provided at a lesser intensive level of care than all aspects of the provided treatment program—a 30-day residential in-patient program. *Id.* at 1024. Dr. Warren further certified all treatment services were provided under his direction and written plan of care. *Id.* Dr. Warren also completed a Physician Initial Certification of Need for Admission. *Id.* Based on Dr. Warren's verbal order to admitting nurse, Amber Poth, R.N., Plaintiff was admitted to residential care at Clear Springs Ranch. *Id.*

In his treatment notes, Dr. Warren stated Plaintiff's "inability to abstain from drugs/alcohol use with high risk for harm to self or others" as a "justification for treatment." *Id.* at 1023. Moreover, in his Initial Addiction Medicine Evaluation, Dr. Warren states Plaintiff "is here for polysubstance abuse" and lists Plaintiff's "previous substance abuse" that includes opiates (last used 14 days before admission), alcohol (last used 2 days before admission), marijuana (last used 1 day

before admission), ecstasy (last used the day of admission), and amphetamines (last used 2 days before admission). *Id.* at 1029.

In his reply, Plaintiff contends the ALJ never cited to these specific notes and this is procedural error. Pl.'s Reply 2 (ECF No. 17). The Court disagrees.

First, the Court already noted the ALJ cited generally to the patient records from Clear Springs Ranch. While the ALJ could have cited to specific pages within Exhibit 9F to support her determination of DAA as she chose to do in other parts of her decision, procedural perfection is not required. *Jacquelyn S. v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4359412, at *3, 5 (N.D. Tex. Aug. 27, 2019) (Rutherford, J.) (cases compiled), *rec. adopted*, 2019 WL 4318885 (N.D. Tex. Sept. 12, 2019) (Lindsay, J.).

Second, even if the ALJ failed to cite to Clear Springs Ranch patient records at all, the ALJ would not have committed an error. The "ALJ's failure to mention a particular piece of evidence does not necessarily mean that [the ALJ] failed to consider it" when "the ALJ's decision states explicitly that [the ALJ] considered the entire record in [the ALJ's] decision." *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005). There is not a "statutorily or judicially imposed obligation for the ALJ to list explicitly all the evidence [s]he takes into account in making h[er] findings." *See id.* at 851.

Plaintiff argues the ALJ's alleged failure to cite to specific medical evidence from an acceptable medical source is a procedural error that leaves no room for this Court's discretionary review based on two cases: *Briggs* and *Michaelis*. Pl.'s

Br. 15, 17; Pl.'s Reply 1-4; *see Briggs v. Berryhill*, No. 6:18-cv-00035-ADA-JCM (W.D. Tex. filed Mar. 18, 2019) (ECF No. 17) (document sealed) (Manske, J.), *rec. adopted*, 6:18-cv-00035-ADA-JCM (W.D. Tex. filed Apr. 3, 2019) (ECF No. 18) (Albright, J.); *Michaelis v. Berryhill*, 2018 WL 2164522, at *11-12 (N.D. Tex. Apr. 6, 2018) (Ramirez, J.), *rec. adopted*, 2018 WL 2150974 (N.D. Tex. May 10, 2018) (Lynn, C.J.). But both cases are distinguishable from the case before this Court.

In *Briggs*, the ALJ concluded the plaintiff suffered from DAA based on her testimony and multiplicity of prescriptions, but "no medical professional diagnosed [the plaintiff] with a substance-abuse disorder." *Briggs*, 6:18-cv-00035-ADA-JCM (ECF No. 17), at 2. Also, "[t]he ALJ never explained whether [the plaintiff] would be eligible for benefits if she did not allegedly suffer from substance abuse." *Id.* Relying on SSR 13-2p, "the ALJ was not entitled to find [the plaintiff] impaired by a substance[-]abuse disorder based on self-reported drug or alcohol use without *any* evidence from an acceptable medical source." *Id.* at 4 (emphasis added) (internal quotations omitted). The court determined the ALJ made a diagnosis error that was material to the disability determination because "the ALJ never addressed how the absence of the alleged substance abuse would affect the ALJ's analysis of [the plaintiff's] disability. *Id.* at 5 (emphasis added).

By contrast, in this case, the ALJ determined Plaintiff suffered from DAA. But, as explained above, medical evidence from an acceptable medical source also existed that Plaintiff suffered from DAA. And the ALJ addressed how the absence

of the DAA would affect the ALJ's RFC analysis. Therefore, the case before this Court is distinguished from *Briggs*. *See generally id.* at 2-5.

In *Michaelis*, medical evidence from an acceptable medical source documented the plaintiff's DAA. *Michaelis*, 2018 WL 2164522, at *1-5, 9-11. However, the ALJ discounted a treating physician's opinion because the physician "failed to mention the 'impact of [the plaintiff's] alcohol abuse and depressive symptoms, which were both noted by other treating physicians in connection with [the plaintiff's] pain.'" *Id.* at *10 (quoting the ALJ's hearing decision in that case). The plaintiff argued the ALJ circumvented legal standards and violated SSR 13-2p because the ALJ rejected the physician's opinion. *Id.* At issue was whether an ALJ could consider DAA without first making a finding of disability. *See id.* The court decided that the ALJ did not apply the correct legal standard and therefore erred because the ALJ considered the plaintiff's DAA in the ALJ's RFC determination and rejected part of the physician's opinion for failure to mention the impact of the plaintiff's DAA without first determining whether the plaintiff was disabled. *Id.*

But here, the ALJ determined Plaintiff was disabled before considering the materiality of Plaintiff's DAA. And Plaintiff did not point this Court to any medical opinion that the ALJ discounted because it did not consider the effects of Plaintiff's DAA before the ALJ determined Plaintiff was disabled due to his DAA. Therefore, this case is also distinguished from *Michaelis*. *See generally id.* at *1-5, 9-11.

Accordingly, the Court finds and concludes that the ALJ's DAA determination is supported by substantial evidence because medical evidence from

an acceptable medical source supports it. Additionally, the ALJ generally cited the medical evidence in support of her DAA determination. However, even if the ALJ failed to cite the specific items within Plaintiff's patient records, the ALJ would not have committed error warranting remand.

   2.   The ALJ adequately accounted for all severe impairments.

Plaintiff further contends the ALJ should have accounted for all severe impairments Plaintiff alleged at step two. Step two imposes a duty upon the ALJ to consider the medical severity of a plaintiff's impairments. *Bragg v. Comm'r*, 567 F. Supp. 2d 893, 907 (N.D. Tex. 2008) (Ramirez, J.), *rec. accepted*, 567 F. Supp. 2d 893, 896 (N.D. Tex. 2008) (Godbey, J.)).

A severe impairment is "any impairment or combination of impairments which significantly limits [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The Fifth Circuit has held that a literal application of § 404.1520(c) would be inconsistent with the Social Security Act because the regulation includes fewer conditions than indicated by the statute. *Bragg*, 567 F. Supp. 2d at 906 (citation omitted). Accordingly, in the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone v. Heckler*, 752 F.2d 1099, 1101-05 (5th Cir. 1985). Additionally, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Id.* at 1104.

To ensure that the regulatory standard for severity does not limit a plaintiff's rights, the Fifth Circuit held in *Stone* that a court should assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Id.* at 1106; *accord Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Notwithstanding this presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Unless the correct standard of severity is used, the claim must be remanded to the Commissioner for reconsideration. *Stone*, 752 F.2d at 1106.

Here, the ALJ expressed the correct standard when the ALJ stated:

> An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.

A.R. 22 (citing 20 CFR §§ 404.1522, 416.922; SSR 85-28, 16-3p), 24 (citing SSR 85-28); *see Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (holding the SSR 85-28 standard comports with the *Stone* standard). However, the Court looks beyond these magic words to consider whether the ALJ applied the correct standard. Specifically, Plaintiff alleges the ALJ should have considered Plaintiff's severe impairments of systemic lupus erythematosus (lupus), aortic valve disease, and

complex regional pain syndrome (CRPS) at step two but failed to do so. Pl.'s Br. at 17-28.

> a.   Lupus

Plaintiff first argues his lupus was a severe impairment and the ALJ erred when she relied on Dr. Cohen's opinion and ignored the assessments of state-agency physicians, Drs. Reid and Braverman, and Plaintiff's treating physician, Dr. Rigsby. Pl.'s Br. 17-21.

The ALJ stated Plaintiff "was diagnosed with lupus in 2016 by his primary care physician based on a positive ANA." A.R. 24 (citing Dr. Rigsby's patient records). The ALJ then explained, "[however], a treating rheumatologist called this diagnosis into question." *Id.* (citing Dr. Cohen's patient records). The rheumatologist noted "that he was skeptical that [Plaintiff] had lupus" because Plaintiff's "morbid obesity would likely aggravate any lower extremity complaints." *Id.* The ALJ continued "a follow up physical examination remained unchanged" because "[r]ange of motion was good in all joints and gait was normal." *Id.* at 24-25. Citing Dr. Cohen again, the ALJ further noted Plaintiff's treating rheumatologist "did not think [Plaintiff] had lupus" and "did not clearly diagnose the condition[] but called such a diagnosis into question." *Id.* at 25.

The ALJ is responsible for interpreting the medical evidence. *Fontenot*, 661 F. App'x at 277 (citation omitted). The Court's "inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id.* (citation omitted); *accord Gutierrez v. Barnhart*, 2005 WL 1994289, at *7 (5th

13

Cir. Aug. 19, 2005) (per curiam). "If supported by substantial evidence, the [ALJ's] findings are deemed conclusive, and the court must accept them." *Jones v. Astrue,* 851 F. Supp. 2d 1010, 1015 (N.D. Tex. 2012) (citing *Richardson,* 402 U.S. at 390).

In his brief, Plaintiff agrees that Dr. Cohen was skeptical Plaintiff had lupus and Dr. Cohen noted he did not think Plaintiff had lupus. Pl.'s Br. 20. Plaintiff has not shown that credible evidentiary choices or medical findings do not support the ALJ's RFC finding. Instead, Plaintiff points this Court to other evidence in the record such as Plaintiff's complaints of lupus and lupus's symptoms as proof he had lupus. Pl.'s Br. 18-20. Plaintiff also points out that Dr. Rigsby, Plaintiff's internist, diagnosed Plaintiff with lupus. *Id.* And, as the Commissioner notes, Dr. Rigby referred Plaintiff to Dr. Cohen, a rheumatologist specialist. Def.'s Resp. 10 (ECF No. 16); *see* A.R. 368, 370. But Plaintiff's "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Jones v. Saul,* 2021 WL 2895867, at *5 (N.D. Tex. July 9, 2021). To the contrary, the Court finds and concludes that substantial evidence from Dr. Cohen supports the ALJ's decision here.

Plaintiff also argues the ALJ ignored the state-agency physicians' opinions regarding lupus. Pl.'s Br. 20-21. As the Commissioner notes, the state-agency physicians stated Plaintiff was capable of light-exertional-level work, rather than the ALJ's finding of reduced sedentary work. Def.'s Resp. 10. As the Court already explained, an "ALJ's failure to mention a particular piece of evidence does not necessarily mean that [the ALJ] failed to consider it" when "the ALJ's decision

14

states explicitly that [the ALJ] considered the entire record in [the ALJ's] decision." *Hammond v. Barnhart,* 124 F. App'x 847, 851 (5th Cir. 2005). In this case, the ALJ noted that her findings were "[a]fter careful consideration of the entire record." A.R. 20. And the ALJ found the state-agency physicians were "partially persuasive," but she decided Plaintiff was "more limited after considering [Plaintiff's] testimony and viewing the evidence in a light most favorable to [Plaintiff]." *Id.* at 30.

Additionally, "[t]he existence of an impairment does not in itself establish disability; a [plaintiff] is disabled only if he is incapable of engaging in any substantial gainful activity." *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986) (internal quotations and citation omitted). Here, the ALJ was more restrictive in her RFC than the state-agency physicians suggested with their diagnoses of lupus. In other words, the ALJ found Plaintiff more limited than the state-agency physicians did. Therefore, even if the ALJ accepted the state-agency physicians' diagnoses as written as Plaintiff requests, Plaintiff's RFC would include fewer limitations—not more. In sum, the ALJ adequately considered Plaintiff's lupus.

### b. *Aortic valve disease*

Plaintiff also contends the ALJ erred at step two when the ALJ failed to acknowledge Plaintiff's cardiac impairment because the state-agency physicians determined Plaintiff's severe impairments included aortic valve disease and Plaintiff's disability application alleged congestive heart failure. Pl.'s Br. 21-22; *compare* A.R. 263, *with* A.R. 97, 110. The Commissioner responds that the medical

evidence in the record lacks evidence of any cardiac issues. Def.'s Resp. 11. The Commissioner notes: Plaintiff's counsel did not mention Plaintiff's alleged aortic valve disease or congestive heart failure when the ALJ asked him to describe his theory of the case, *see* A.R. 49; Plaintiff did not mention his alleged aortic valve disease or congestive heart failure when he testified, *see* A.R. 50-74; the evidence lacks any treatment records from a cardiologist, *see* A.R. 361-1099; Plaintiff's 2018 electrocardiogram was normal, *see* A.R. 649; and Plaintiff never indicated what additional limitations he required for his alleged cardiac issues for which he sought no treatment, *see* A.R. 50-74, 213-228. Def.'s Resp. 11. Plaintiff replies that this is an unpermitted *post hoc* rationalization because the ALJ did not consider or evaluate Plaintiff's cardiac condition. Pl.'s Reply 5-7. However, Plaintiff's assertions of *post hoc* rationalizations fail.

The ALJ considered the entire record and addressed heart-related conditions. A.R. 24. The ALJ noted Plaintiff "has non-severe physical impairments: hypertension, obstructive sleep apnea, high cholesterol and high triglycerides as the medical evidence did not suggest any limitations associated with . . . these conditions." *Id.* Therefore, the ALJ addressed cardiac impairments without specifically mentioning aortic valve disease, an issue Plaintiff never alleged or discussed, or congestive heart failure, an issue Plaintiff alleged but never developed by evidence or discussion.

On the other hand, even if Plaintiff is correct that the ALJ failed to consider Plaintiff's alleged cardiac impairments, such a conclusion does not require an

automatic reversal—if the ALJ proceeds past step two, the Court considers whether the error was harmless. *Keel*, 986 F.3d at 556; *Alicia D. v. Berryhill*, 2018 WL 3722320, at *7 (N.D. Tex. July 12, 2018) (Horan, J.), *rec. accepted*, 2018 WL 3716897 (N.D. Tex. Aug. 3, 2018) (Scholer, J.). The error is harmless if the ALJ considered Plaintiff's conditions in her RFC analysis. *Alicia D.*, 2018 WL 3722320, at *7 (citing *Herrera v. Comm'r*, 406 F. App'x 899, 903 (5th Cir. 2010) (per curiam)).

Here, the ALJ adequately considered Plaintiff's conditions in her RFC analysis. Plaintiff has the "burden to show that [his alleged impairments] so functionally impaired [him] that [he] was precluded from engaging in any substantial gainful activity." *Johns v. Colvin*, 2015 WL 1428535, at *5 (N.D. Tex. Mar. 30, 2015) (Ramirez, J.). "When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). In addition, the ALJ does not err when an ALJ considers all the medical records and no records support a contrary conclusion. *Scott v. Comm'r*, 2018 WL 1321037, at *6 (M.D. La. Mar. 14, 2018) (citing *Gonzalez v. Colvin*, 2016 WL 107843, at *7-8 (N.D. Tex. Jan. 11, 2016) (Fitzwater, J.)).

Plaintiff alleged congestive heart failure in his disability application without alleging any physical or mental limitations or restrictions of a specific functional

capacity. Plaintiff failed to provide the Commissioner with any evidence of his alleged congestive heart failure. *See generally,* A.R. 361-1099. And Plaintiff failed to pursue this allegation at his hearing. *See id.* 49-75. Therefore, the ALJ and any adjudicator must consider Plaintiff to have no limitation or restriction related to congestive heart failure.

Similarly, Plaintiff never alleged aortic valve disease. However, the state-agency physicians noted that Plaintiff's aortic valve disease was severe. Yet, even with this severe impairment, the state-agency physicians were less restrictive than the ALJ. In other words, the ALJ found Plaintiff more limited than the state-agency physicians did. And Plaintiff did not provide any other evidence of aortic valve disease; nor did he pursue this claim at his hearing. Plaintiff provided no medical records that support a contrary RFC conclusion.

The Court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. [4] *Gonzalez,* 2016 WL 107843, at *3. Harmless error exists when it is inconceivable that a different

---

[4] Plaintiff asserts that this Court remanded a case to the ALJ solely because an ALJ failed to acknowledge the presence of impairments in the ALJ's step-two analysis. Pl.'s Br. 22 (citing *Bragg,* 567 F. Supp. 2d 893 at 907). However, the Court remanded the case to the ALJ because the ALJ explicitly failed to use the *Stone* standard to determine impairment severity. *Bragg,* 567 F. Supp. 2d at 907 ("Whether the ALJ denied benefits at Step 2 or later in the sequential evaluation process, the definition of severe impairment remains the same. A failure to use the correct standard of severity is sufficient to remand for further consideration even when the denial of benefits occurred subsequent to Step 2 of the sequential process."). Plaintiff's assertion is not supported by Fifth Circuit jurisprudence. *See, e.g., Alicia D.,* 2018 WL 3722320, at *6-8; *Johns,* 2015 WL 1428535, at *5; *Rowe v. Colvin,* 2017 WL 3821473, at *13-16 (M.D. La. Aug. 31, 2017) (cases collected).

administrative conclusion would have been reached even if the ALJ did not err. *Keel*, 986 F.3d 551 at 556. Based on Plaintiff's allegations and evidence provided, no other adjudicator could reach a different conclusion. Accordingly, any error by the ALJ regarding the consideration of Plaintiff's cardiac conditions was harmless.

       *c.*   *CRPS*

Additionally, Plaintiff contends the ALJ failed to consider Plaintiff's CRPS. Pl.'s Br. 22-26. Plaintiff argues "once the existence of a medically determinable impairment of CRPS has been established, an individual's symptoms and the effects of those symptoms on the individual's ability to function must be considered." Pl.'s Br. 24 (citing SSR 03-2p, 2003 WL 22814447, at *6). The Commissioner responds the ALJ considered Plaintiff's complaints of pain—symptoms of CRPS. Def.'s Resp. 11-13. Plaintiff replies that, contrary to the Commissioner's response, the ALJ did not conduct a proper step-two evaluation because the ALJ did not mention anywhere in her decision Plaintiff's CRPS or SSR 03-2p, the ruling that requires a special CRPS analysis at step two. Pl.'s Reply 8 (citing *Scott v. Colvin*, 2017 WL 1243154, at *10 (M.D. La. Feb. 24, 2017), *rec. accepted*, 2017 WL 970271 (M.D. La. Mar. 13, 2017)).

In this case, Plaintiff failed to allege before his appeal to this Court that he suffered from CRPS. *See* A.R. 49, 263. And Plaintiff failed to provide the Commissioner with evidence that supports CRPS as a medically determinable impairment.

CRPS is a term "used to describe a unique clinical syndrome that may develop *following a trauma*." SSR 03-2p, 2003 WL 22814447, at *1 (emphasis added). "CRPS is *a chronic pain syndrome* most often resulting from trauma to a single extremity." *Id.* (emphasis added). This implies there is more than one type of chronic pain syndrome. According to SSR 03-2p,

> CRPS constitutes a medically determinable impairment when it is documented by appropriate medical signs, symptoms, and laboratory findings. . . . [And] the documentation of medical signs or laboratory findings at some point in time in the clinical record since the date of the precipitating injury is *critical* in establishing the presence of a medically determinable impairment.

*Id.* at *4 (emphasis added).

Here, Plaintiff alleges he has CRPS because his pain-management physician diagnosed him with chronic pain syndrome. Pl.'s Br. 23. However, chronic pain syndrome is not CRPS. *See Wessel v. Colvin*, 2015 WL 12712297, at *10 (D. Conn. Dec. 30, 2015) ("Specifically, the issue is whether 'CRPS' . . . is the same as 'chronic pain syndrome' . . . The Court declines to make such a determination."). While CRPS is a type of chronic pain syndrome, Plaintiff has not pointed this Court to any source or court that determined the two conditions are synonymous. Moreover, Plaintiff failed to point this Court or the ALJ to any precipitating injury, which is critical to establish CRPS as a medically determinable impairment. Because Plaintiff did not provide the ALJ with a precipitating injury to Plaintiff's pain or provide any evidence of a diagnosis of CRPS, the ALJ was not required to consider CRPS as a medically determinable impairment, mention it in her

decision, or go through the required SSR 03-2p analysis. Accordingly, the ALJ did not err by not considering it as an impairment at step two.

As for considering Plaintiff's chronic pain syndrome, as the Commissioner asserted, the ALJ considered Plaintiff's complaints of pain from his chronic pain syndrome. Def.'s Resp. 11-13; *see* A.R. 24. At step two, the ALJ mentioned Plaintiff "reported daily pain and swelling in elbows, knees, and ankles" but Plaintiff "had also recently gained 60 pounds." A.R. 24. The ALJ noted an initial and a follow up "physical examination revealed no deformities, synovitis, or tenderness in any joints." *Id*. at 24-25. And "[r]ange of motion was also good in all joints." *Id*. at 25. The ALJ recognized that Plaintiff's "rheumatologist noted . . . [Plaintiff's] morbid obesity would likely aggravate any lower extremity complaints." *Id*. at 24. Therefore, the ALJ did consider pain as a "symptom of the obesity," which the ALJ found to be a severe impairment. *Id*. at 25. Therefore, the ALJ addressed Plaintiff's chronic-pain-syndrome symptoms at step two.

Furthermore, as discussed above, even if Plaintiff is correct that the ALJ failed to consider Plaintiff's chronic pain syndrome at step two because the ALJ never used the term "chronic pain syndrome," such a conclusion does not require an automatic reversal—if the ALJ proceeds past step two, the Court considers whether the error was harmless. *Keel*, 986 F.3d at 556; *Alicia D.*, 2018 WL 3722320, at *7. The error is harmless if the ALJ considered Plaintiff's conditions in her RFC analysis. *Alicia D.*, 2018 WL 3722320, at *7 (citing *Herrera v. Comm'r*, 406 F. App'x 899, 903 (5th Cir. 2010) (per curiam)).

Here, the ALJ discussed the Plaintiff's pain at length when determining

Plaintiff's RFC:

> [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical evidence and other evidence . . . [Plaintiff] reported a history of joint pain and neuropathy; however, the physical findings generally noted subjectively reported pain on range of motion, but limited objective evidence that range of motion was limited. No pain or swelling was noted in any joints. Motor strength was 5/5 in all areas. [Plaintiff] noted a 50% decrease in pain with injections, which lasted two months. He also utilized Norco for pain relief. At the hearing, [Plaintiff] reported little relief that he suggested did not last long. However, a 50% decrease in reported pain for more than two months after a single [injection] is indicative of significant improvement. These findings appeared unchanged in March and July 2017. Moreover, [Plaintiff] reported his medication was working fine and managing his pain in September 2017.

> When [Plaintiff] ceased alcohol consumption, stopped taking narcotics, entered a rehabilitation program, and began a progressive exercise program as recommended—[Plaintiff] reported a decreased pain he rated at 5/10 without medications.

> Despite [Plaintiff's] reports of pain and swelling in multiple joints, multiple physical examinations performed by [his] primary care provider over one month failed to note any extremity edema or abnormal sensation or other neurological findings. Musculoskeletal findings were within normal limits.

> Moreover, when [Plaintiff] attended substance[-]use rehabilitation, he denied needing assistance with activities of daily living such as dressing, ambulation, bathing, or grooming. However, alleged difficulty performing identical chores both in his function report and in his testimony at the hearing.

> Given [Plaintiff's] testimony regarding pain, neuropathic pain, and reported swelling in his feet and hands, the [ALJ] has limited [Plaintiff] to only occasionally balancing, stooping, kneeling, crouching, and crawling. Additionally, due to these reported symptoms, [Plaintiff] can only frequently handle, finger, and feel.

> In the month he alleged onset, [Plaintiff] reported improved pain with injections, medications, resting, and sitting. However, at the hearing, he testified that sitting worsened his pain. Pain management records noted that [Plaintiff] reported injections significantly decreased his pain for two months and his pain was controlled with pain medications. [Plaintiff] was without any type of pain relief for two to three weeks every month—but without any evidence to suggest increased functional limitations during these periods.

A.R. 34-35 (internal citations to the administrative record omitted). The ALJ accounted for Plaintiff's pain allegations and considered the objective medical evidence from acceptable medical sources. Hence, any error at step two regarding Plaintiff's chronic pain syndrome would be harmless.

3.  <u>The ALJ's RFC determination is supported by substantial evidence</u>.

Finally, Plaintiff avers the ALJ's RFC determination cannot be supported by substantial evidence because the ALJ disregarded all medical-opinion evidence and made an RFC assessment based upon her own lay opinion. Pl.'s Br. 28-31. The Commissioner responds the ALJ relied on professional guidance from state-agency physicians in making her RFC finding and therefore the RFC is supported by substantial evidence. Def.'s Resp. 13-15.

RFC is the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1). The RFC determination is a "combined medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hill v. Saul*, 2020 WL 6370168, at *6 (N.D. Tex. Sept. 29, 2020) (Ramirez, J.) (internal quotations omitted) (quoting *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir.

1988) (per curiam)), *rec. accepted*, 2020 WL 6363878 (N.D. Tex. Oct. 29, 2020) (Lindsay, J.). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). An individual's RFC should be based on all relevant evidence in the case record, including opinions submitted by medical sources. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, at *1.

The ALJ bears the "sole responsibility for determining the [plaintiff's] disability status." *Thibodeaux v. Astrue*, 324 F. App'x 440, 443 (5th Cir. 2009) (citing *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)). "Determining a [plaintiff's RFC] is the ALJ's responsibility, and [the ALJ] has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [the ALJ's] findings." *Hill*, 2020 WL 6370168, at *6 (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)). The Court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting" the ALJ's decision. *Hill*, 2020 WL 6370168, at *6 (quoting *Martin*,

748 F.2d at 1031). A no-substantial-evidence finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Hill*, 2020 WL 6370168, at *6 (citing *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988)). After reviewing the hearing decision and the administrative record, the Court finds the ALJ's RFC determination is supported by substantial evidence.

Here, the ALJ based her RFC findings "on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all [Plaintiff's] medically determinable impairments." A.R. 33. The ALJ determined Plaintiff to have the RFC "to perform sedentary work . . . assessed as lifting and carrying up to 10 pounds occasionally and less than 10 pounds frequently, standing and/or walking 2 hours in an 8-hour workday and sitting 6 hours in an 8-hour workday." *Id.* The ALJ further limited Plaintiff's RFC determining he could occasionally balance, stoop, kneel, crouch, and crawl; frequently handle, finger, and feel; and avoid concentrated exposure to extreme temperatures.[5] *Id.*

---

[5] Before considering Plaintiff's RFC absent his DAA, the ALJ determined Plaintiff would have excessive absences from work during periods of active DAA, including missing more than one day of work per month. A.R. 27. The ALJ also restricted Plaintiff to avoid other hazards including unprotected heights, open flames, or operating a vehicle. *Id.* However, without DAA, the ALJ determined Plaintiff would no longer require excessive absences from work or to avoid other hazards. *Id.* at 33-35.

In explaining how the ALJ came to this determination, she points to Plaintiff's hearing testimony and objective medical evidence in the record. *Id.* at 27-30, 33-35. The ALJ further determined the state-agency physician's medical-opinion evidence was "partially persuasive." *Id.* at 30. The state-agency physicians concluded that Plaintiff "could perform a reduced range of light work, including standing and/or walking 4 hours in an 8-hour workday." The ALJ decided Plaintiff was more limited in his RFC "after considering [his] testimony and viewing the evidence in a light most favorable to [him]." *Id.*

The Fifth Circuit "held that an ALJ may not—without opinions from medical experts—derive" a plaintiff's RFC and "an ALJ may not rely on [her] own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Jeff Ivan M. v. Berryhill*, 2019 WL 3847992, at *5 (N.D. Tex. July 26, 2019) (Horan, J.) (internal quotations omitted) (*quoting Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995))), *rec. accepted*, 2019 WL 3842975 (N.D. Tex. Aug. 15, 2019) (Cummings, J.). "ALJs 'must be careful not to succumb to the temptation to play doctor' or make their own independent medical assessments." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (Posner, J.)). However, it is the sole responsibility of the ALJ to determine the RFC, and this function is not to be confused with an ALJ substituting her own lay opinion for a medical opinion. *Gina R. v. Comm'r*, 2021 WL 1209198, at *3 (N.D. Tex. Mar. 30, 2021) (Toliver, J.) (citing *Taylor v. Astrue*, 706 F.3d 600,

602-603 (5th Cir. 2012) (citing *Ripley*, 67 F.3d at 557 (noting the RFC determination is the sole responsibility of the ALJ); 20 C.F.R. § 404.1520c (noting the ALJ is only required to consider, not accept, medical opinion evidence)).

In this case, the Court finds the ALJ's RFC findings are supported by substantial evidence. The ALJ did not play doctor and partially relied on the state-agency physicians' medical opinions of record to inform her RFC finding. The ALJ added more restrictions than the state-agency physicians suggested based on Plaintiff's hearing testimony and other medical evidence of record. The ALJ determined Plaintiff's RFC "after careful consideration of the entire record." A.R. 27. The ALJ "considered all symptoms and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929 and SSR 16-3p." A.R. 33. The ALJ "also considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927." *Id.* Therefore, the ALJ's RFC determination is supported by substantial evidence because it is supported by the record as a whole, including state-agency physicians' opinions, Plaintiff's hearing testimony, and other medical evidence.[6] *See, e.g.*, *Medendorp v. Berryhill*, 2018 WL 5723166, at *6 (N.D. Tex. Oct. 16, 2018) (Cureton, J.), *rec. accepted*, 2018 WL

---

[6] Plaintiff also avers the ALJ should have given greater weight to another doctor's assessment instead of the state-agency physicians' assessments when formulating her RFC determination. Pl.'s Br. 33. However, as explained above, Plaintiff's "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Jones*, 2021 WL 2895867, at *5. Here, Plaintiff fails to meet this burden.

5720753 (McBryde, J.). And, just as the *Taylor* and *Gina R.* courts rightly advised, this Court does not confuse an ALJ interpreting the medical evidence to determine a plaintiff's RFC with the ALJ substituting her own opinion for that of a medical professional. *See Gina R.*, 2021 WL 1209198, at *4 (citing *Taylor*, 706 F.3d at 603).

Additionally, even if the ALJ did err by adding additional restrictions not supported by substantial evidence, Plaintiff fails to show that he was prejudiced by these additional restrictions that would qualify him for less work than recommended by the state-agency physicians' assessments. Hence, any error the ALJ may have committed when she added additional restrictions was harmless.

Accordingly, the Court finds the ALJ has appropriately considered and resolved conflicts in the evidence. Substantial evidence supports the ALJ's determination of Plaintiff's RFC.

## Recommendation

Because evidence from an acceptable medical source supports the ALJ's finding of DAA, the ALJ adequately accounted for Plaintiff's severe impairments, and substantial evidence supports the ALJ's RFC determination, the ALJ applied the correct legal standards and any error on the part of the ALJ was harmless. Accordingly, substantial evidence supports the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act, and the Court should AFFIRM the hearing decision in all respects.

**SO RECOMMENDED.**

January 19, 2022.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).